UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>  v.<br>ALVIN FLORIDA, JR.,<br>ROBERT ALHASASH RASHEED,<br>JOHN LEE BERRY, III,<br>REFUGIO DIAZ, and<br>STEPHAN ALEXANDER FLORIDA,<br>  Defendants. | Case No. 14-cr-00582-PJH-1<br><br>**PRETRIAL ORDER NO. 2**<br>Re: Doc. No. 141 |

Before the court is defendants' motion to suppress warrantless audio recordings (doc. no. 141). The parties have filed supplemental post-hearing briefs, declarations and exhibits, and the matter is submitted. Having reviewed the relevant legal authority, the parties' papers, argument of counsel, and evidence in the record, the court DENIES the motion to suppress for the reasons set forth below.

**I.   BACKGROUND**

Defendants Alvin Florida, Jr. ("Al Florida"), Robert Rasheed, John Lee Berry, Refugio Diaz, and Stephan Alexander Florida ("Stephan Florida") are charged in Count One with participating in a conspiracy to rig bids to obtain properties offered at Alameda County public foreclosure auctions from May 2008 to December 2010, and in Counts Two through Nine with mail fraud. Defendants challenge the warrantless use of audio recording devices to capture private conversations at or near the public entrance to the Alameda County courthouse, on the ground that they had a reasonable expectation of

1  privacy in their communications.  As conceded by defense counsel, defendants do not
2  assert a reasonable expectation of privacy as to the video recordings.  Defendants also
3  seek suppression of evidence tainted by the unlawful recordings.  Accordingly, the
4  government's concession that it will not use the courthouse recordings in its case-in-chief
5  does not moot the motion to suppress the recordings.

## II. LEGAL STANDARD

The United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "The Fourth Amendment protects people rather than places, but 'the extent to which the Fourth Amendment protects people may depend upon where those people are.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).  To invoke the protections of the Fourth Amendment, a person must show he had a "legitimate expectation of privacy." *Katz v. United States*, 389 U.S. 347 (1967).  In *Katz*, the Supreme Court held that as long as the target has a legitimate expectation of privacy, a warrant is required for the government to conduct electronic surveillance.  To establish a "legitimate" expectation of privacy, he must demonstrate a subjective expectation that his activities would be private, and he must show that his expectation was "'one that society is prepared to recognize as reasonable.'" *Nerber*, 222 F.3d 597, 599 (quoting *Bond v. United States*, 529 U.S. 334, 338 (2000)).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, prescribes the procedure for securing judicial authority to intercept wire communications in the investigation of specified serious offenses, and provides for suppression of unlawfully intercepted communications.

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.  Section 2510(2) defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."  The Ninth Circuit has recognized that "the legislative history behind § 2510(2) reflects Congress's intent that [the *Katz* inquiry] serve as a guide to define communications that are uttered under circumstances justifying an expectation of privacy," that is, whether the communications were made by a person (1) who has a subjective expectation of privacy, and (2) whose expectation was objectively reasonable.  *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978) (citations omitted).  *See United States v. Cha*vez, 416 U.S. 562, 575 (1974) ("suppression is not mandated for every violation of Title III, but only if 'disclosure' of the contents of intercepted communications, or derivative evidence, would be in violation of Title III"); *United States v. Duran*, 189 F.3d 1071, 1084 (9th Cir. 1999) ("Suppression is required: (i) if the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval.") (citing 18 U.S.C. § 2518(10)(a)).

The district court in the exercise of its discretion may choose to hear live testimony at a suppression hearing rather than rely on the written materials submitted by the parties.  *See United States v. Batiste*, 868 F.2d 1089, 1091 (9th Cir. 1989) (district court properly exercised discretion to hold an evidentiary hearing on probable cause to arrest even though evidentiary hearing was not required where the defendant failed to dispute any material fact in the government's proffer).  If affidavits show as a matter of law that defendant is or is not entitled to relief, no evidentiary hearing is required.  *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980).

**III.  DISCUSSION**

    **A.  Standing**

As an initial matter, the government contends that defendants lack standing to challenge all the stationary recordings under either the Fourth Amendment or under Title

3

III, which only allows an "aggrieved person" to move to suppress wiretap evidence. Opp. Mot. Suppr. Recordings (doc. no. 154) at 4-5 (citing *Rakas v. Illinois*, 439 U.S. 128 (1978) and 18 U.S.C. § 2518(10)(a)). *See* 18 U.S.C. § 2510(11) (an "aggrieved person" means a person "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."). Defendants have submitted declarations by Al Florida, Rasheed, Berry and Stephan Florida asserting an expectation of privacy in their conversations on the steps of the Alameda County courthouse and at the nearby bus stop, with Al Florida and Berry stating that they recognized their voices on some of the recordings. Doc. nos. 167, 168, 171, 180. FBI Special Agent Bond clarified that at least one of the stationary recordings involved a conversation between Al Florida and an undercover agent. Bond Decl. (doc. no. 181-1) ¶ 8.

The government has identified Al Florida, Rasheed and Berry on stationary recordings captured by recording devices at two locations: (1) a vehicle parked in front of the courthouse steps of the Alameda County Courthouse at 1225 Fallon Street, Oakland, and (2) a bus stop near the courthouse on the corner of Fallon Street and 12th Street. Wynar Decl. (doc. no. 154-1) ¶¶ 16-24; Kumar Decl. (doc. no. 181-3), Ex. A. Having identified specific recordings of their conversations in the record, defendants Al Florida, Rasheed and Berry have demonstrated standing under the Fourth Amendment and the wiretap statute to challenge those recordings.

However, with respect to Stephan Florida and Diaz, defendants do not dispute the government's representation that these defendants' conversations were not recorded with the stationary devices, but argue generally that they were identified as a subject of the investigation. Defendants cite no authority broadly construing "a person against whom the interception was directed" to include someone who was under surveillance but had no communications intercepted, was not an owner of the premises where the warrantless interceptions were made, and was not named in a wiretap application. *See United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. 2012) (holding that the defendant was one of the individuals "against whom the interception was directed," even though his

4

voice was not verified to be on any of the recordings, where the affidavits in support of the surveillance orders included investigators' statements certifying their beliefs that he was using the individual cellular phones at issue, showing that the defendant's conversations were the target of the surveillance); *United States v. King*, 478 F.2d 494, 506 (9th Cir. 1973) ("a defendant may move to suppress the fruits of a wire-tap only if his privacy was actually invaded; that is, if he was a participant in an intercepted conversation, or if such conversation occurred on his premises"). *Id.*

In *Alderman v. United States*, 394 U.S. 165, 171-72 (1969), the Supreme Court rejected an expansive view of Fourth Amendment standing urged by the defendants there who argued that "if evidence is inadmissible against one defendant or conspirator, because tainted by electronic surveillance illegal as to him, it is also inadmissible against his codefendant or coconspirator." The Supreme Court recognized that "[t]he established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." *Id.* The Ninth Circuit has held that standing under the wiretap statute is not broader than Fourth Amendment standing. *See United States v. Gonzalez, Inc.,* 412 F.3d 1102, 1116 (2005) ("[t]he Supreme Court has interpreted these provisions as limiting standing to challenge wiretaps to persons whose Fourth Amendment rights were violated by the interception"), *amended by* 437 F.3d 854 (9th Cir. 2006). "Both the language of the statute and its legislative history make it clear that it does not broaden the rule of standing provided for in [former] Rule 41(e), F.R.Crim.P., relating to Fourth Amendment motions to suppress." *King*, 478 F.2d at 506 (citing 18 U.S.C. § 2510(11); S. Rep. No. 1097, 90th Cong. 2d Sess., quoted in 1968 U.S. Code Cong. & Admin. News at 2179). In the absence of authority broadly recognizing that a defendant who was under investigation, but was neither intercepted nor named in a wiretap application, qualifies as an "aggrieved person" under the wiretap statute, the court finds that Diaz and Stephan Florida have not

1  demonstrated that they have standing to challenge the warrantless audio recordings.

2  Under the weight of authority discussed here, the Fourth Amendment standing of defendants Al Florida, Rasheed and Berry is limited to challenging the interception of conversations in which they participated, and not all the warrantless recordings made in the course of the investigation. Stephan Florida and Diaz have not demonstrated standing to move for suppression of any of the warrantless recordings.

### B. Expectation of Privacy

Defendants contend that they had a reasonable expectation of privacy in their communications outside the courthouse, citing cases recognizing a privacy right in communications made in a public place. None of the cases are directly on point, to hold that one has a reasonable expectation of privacy in communications at or near a courthouse entrance.

The government concedes that in the course of the bid-rigging investigation, based on information provided by cooperators, the FBI installed stationary microphones in public spaces in the vicinity of the public auctions outside the Alameda County courthouse in Oakland from March 2010 to December 2010, for the purpose of making recordings around the time of the public foreclosure auctions. Wynar Decl. (doc. no. 154-1) ¶¶ 8-10. The government identified 22 total recordings from stationary devices that may have captured defendants either visually or verbally, plus another 34 audio recordings that may have captured defendants but were not intelligible or were otherwise not pertinent to the investigation. Kumar Decl. (doc. no. 181-3) ¶ 4. In its supplemental opposition, the government listed nine audio recordings that captured defendants' voices, after excluding recordings where an undercover agent was participating or the conversation was unintelligible. Suppl. Opp. (doc. no. 181) at 1-2; Kumar Decl. ¶ 2 and Ex. A. The warrantless recordings at issue were recorded on microphones located in a vehicle parked in front of the courthouse steps of the Alameda County Courthouse and at a bus stop near the courthouse on the corner of Fallon Street and 12th Street. Kumar Decl., Ex. A.

The government contends that defendants did not have a reasonable expectation of privacy in their public oral communications outside the county courthouses, challenging both their subjective expectation of privacy and the reasonableness of that expectation. To determine whether an individual can demonstrate a reasonable expectation of privacy, the court weighs the factors set forth in *Kee v. City of Rowlett*, 247 F.3d 206, 213-15 (5th Cir. 2001)):

> (1) the volume of the communication or conversation;
>
> (2) the proximity or potential of other individuals to overhear the conversation;
>
> (3) the potential for communications to be reported;
>
> (4) the affirmative actions taken by the speakers to shield their privacy;
>
> (5) the need for technological enhancements to hear the communications; and
>
> (6) the place or location of the oral communications as it relates to the subjective expectations of the individuals who are communicating.

*See Reynolds v. City and County of San Francisco*, 2012 WL 1143830 at *5 (N.D. Cal. Mar. 30, 2012) (citing *Kee*).

### 1. Subjective Expectation of Privacy

Defendants Al Florida, Rasheed and Berry each filed a declaration stating his belief that many of his conversations before, during and after the auctions at or near the courthouse steps were private. They suggest that they took steps to protect their conversations by moving away from other people, moving to another location, covering their mouths and speaking in whispers. There are no facts in the record to demonstrate their subjective beliefs that the conversations would remain private, though Berry states that he cannot remember the detailed circumstances of each conversation since the recordings were made without his knowledge over five years ago. Berry Decl. (doc. no. 167) ¶ 5. Defendants argue that their subjective expectation that their conversations would remain private was reasonable, even in a public place such as a courthouse

entrance, given the personal nature of conversations that people often carry in hushed tones as they enter or leave the courthouse.

The evidence in the record, including audio recordings of the intercepted communications, suggests that defendants communicated near the courthouse entrance openly with several, even up to seventeen, people at a time to work out the secondary auction. The record includes FBI witness interview notes indicating that Rasheed participated in a round involving seventeen people, which does not support a reasonable expectation of privacy. Wynar Decl., Ex. J at NDRE-FBI-I-000654. Witness Juan Diaz described a busy day of rounds: "They would round on the back of the bus, then go bid on another auction, then go back to another round. One round was done on the courthouse steps. Brian M.; Greg; Javiar; Al; Miguel; Doug; Gary; George; and Robert Rasheed." Wynar Decl., Ex. C at NDRE-DOJ-000126. These rounds were conducted in public areas, sometimes with a large group of secondary bidders, which could not reasonably be expected to be private.

These circumstances do not demonstrate a subjective expectation of privacy, even in light of defendants' conclusory statements that they believed their conversations were private. In having these conversations, the "rounders" did not leave the vicinity of the public auctions, which were held outside the courthouse just prior to the secondary auction. The auctioneer would typically position himself at the top of the steps or midway on the landing of the steps of the courthouses to conduct the public auctions, which were held weekdays from 12 noon to 12:30 pm at the Alameda County courthouse. Wynar Decl. ¶ 10. Defendants took part in the recorded conversations at or near the courthouse entrance or at the corner bus stop bearing a "County Court House" sign. Kumar Decl., Exs. E, F, G. Other than defendants' own conclusory statements, there are no reliable facts in the record to support a finding that any defendants had a subjective expectation of privacy in the conversations at issue.

### 2. Reasonableness

Even if defendants' conclusory assertions of their subjective expectations were supported by facts, the *Kee* factors render those expectations objectively unreasonable, particularly the factors: proximity or potential of other individuals to overhear the conversation, potential for communications to be reported, and location of the communications, as it relates to their subjective expectations. Having listened to the recordings at issue, the court finds that defendants did not take steps to protect the privacy of the conversations that were audibly recorded.

#### a. The volume of the communication or conversation

The recordings at issue intercepted defendants' communications that were made at a normal conversational volume level, not in hushed or whispering tones. Many conversations were conducted by participants in loud voices, sometimes laughing out loud. In particular, the audio recording of a conversation among Berry and Rasheed in a group of about eight to ten men on August 17, 2010, at the Fallon Street bus stop, which was provided to the grand jury during the indictment presentation, reflects that the participants had to project their voices and yell to be heard over the sound of a nearby jackhammer. Kumar Decl. ¶ 9 and Ex. B, 1D484.002.wav (under seal). All of the recordings picked up background noise, such as automotive traffic, construction noise, and other conversations from people nearby, which often drowned out defendants' conversations on the recording. In the video footage accompanying many of the audio recordings, the participants are not seen appearing to whisper or covering their mouths when having audible conversations that can be heard on the recording. Kumar Decl., Ex. B (video/audio recordings 1D140, 1D250, 1D261, 1D365, 1D488) (under seal). In listening to the audio recordings, the court observed that when a person was speaking at a lowered volume, the recorded communications were not audible or intelligible. The audible conversations that were recorded were loud enough to be heard by anyone passing by, whether at the courthouse entrance or at the bus stop, undermining the reasonableness of any subjective expectation of privacy.

### b. The proximity or potential of other individuals to overhear the conversation

The fact that the rounds were conducted in open, public areas close to the courthouse entrance, where the public auctions had just been held, and where various members of the public, including law enforcement officers and attorneys, come and go, does not support a reasonable expectation of privacy under the second *Kee* factor. Defendants suggest that private affairs are routinely discussed outside courthouses, including attorney-client communications. Mot. Suppress (doc. no. 141) at 6. It is unlikely, and certainly unreasonable, for attorneys to risk breaching their confidential communications with clients by discussing sensitive matters out in the open, in conversational tones, in front of a public forum such as a courthouse, where they could easily be overheard by other attorneys, prosecutors, law enforcement officers, security personnel, court staff, judges, and other bystanders. As an aside, it has been the court's observation that conversations near the courthouse entrance are frequently overheard by unintended and unseen listeners, even from inside the courthouse. Defendants cite no authority recognizing an objectively reasonable expectation of privacy in the space immediately outside a courthouse entrance.

### c. The potential for communications to be reported

As noted above, defendants conducted the intercepted conversations at or near a courthouse entrance, where the public foreclosure auction was daily held and where members of the bar and law enforcement officers routinely traversed, exposing them to a high likelihood of being observed and reported. Furthermore, many of defendants' conversations were conducted with multiple participants, any of whom could have reported the bid-rigging activity. *See Hoffa v. United States*, 385 U.S. 293, 303 (1966) ("The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society.") (citation and internal marks omitted).

**d.     Affirmative actions taken by the speakers to shield their privacy**

Defendants have not offered evidence to show affirmative actions taken to protect their privacy, other than suggesting that they tried moving away from other people, standing close together, covering their mouths and speaking in low volumes. Having listened to the recordings at issue, many of which were accompanied by video images, the court determines that when a speaker spoke in a quiet voice or leaned in to whisper to the listener, the communication was not audibly intercepted by the recording device. Based on the recorded communications that are audible or intelligible, it is clear that defendants did not take measures to keep their conversations private. Unlike *Katz*, where the defendant went into a phone booth and closed a glass door to protect his privacy, defendants did not enter an enclosed space but stayed in an open, public area. The photos of the Fallon Street bus stop show that the bus shelter was not closed, but opened to the street, and was located at a busy corner with pedestrian traffic and street traffic. Kumar Decl., Exs. E, F, G.

**e.     The need for technological enhancements to hear the communications**

To address the fifth *Kee* factor, the government offers evidence that the FBI used recording devices that picked up only what could be heard by a human ear and did not amplify the conversations. Wynar Decl. (doc. no. 154-1) ¶ 12(b). FBI Special Agent Wynar states that the microphones used to make the recordings have the following characteristics: (1) they are omnidirectional, i.e., there is no additional gain in a particular direction; (2) the microphones lack equalization or noise cancellation; (3) the minimum sound pressure level detectable by the microphone is limited by its own electrical noise, which is specified by the manufacturer as 33.0dB (A-weighted), maximum, and (4) they are less sensitive than a healthy human ear. Wynar Decl. ¶ 12(b). The evidence shows that the intercepted conversations could be overheard by a human ear. *See United States v. Fisch*, 474 F.2d 1071, 1077 (9th Cir. 1973) (per curiam) (finding no reasonable

expectation that conversations in hotel room would not be heard in the next room, noting that the "officers were in a room open to anyone who might care to rent [and] were under no duty to warn the appellants to speak softly, to put them on notice that the officers were both watching and listening."). As noted earlier, the sound quality of the audio recordings reflect that the recording devices only picked up voices in conversational or loud tones, and not hushed or whispered voices.

### f. The place or location of the oral communications in relation to the subjective expectations of the individuals who are communicating

Given the proximity of defendants to the courthouse entrance, which was the site of the public auction, when they conducted communications about the secondary auctions, the context of the conversations does not support a legitimate expectation of privacy.

While the court agrees with defendants that it is at the very least unsettling that the government would plant listening devices on the courthouse steps given the personal nature of many of the conversations in which people exiting the courthouse might be engaged, it is equally unrealistic for anyone to believe that open public behavior including conversations can be private given that there are video cameras on many street corners, storefronts and front porches, and in the hand of nearly every person who owns a smart phone. There are no cases which establish a bright line rule one way or the other. Instead, the court is required to apply the *Kee* factors to the evidence of record. Based upon a review of that evidence, the court cannot find that any subjective expectation of privacy held by defendants was objectively reasonable. Accordingly, the court finds that the warrantless recording of defendants' conversations did not violate their rights under the Fourth Amendment or under the wiretap statute. The court need not reach the taint issue and defendants are not entitled to an evidentiary hearing. The motion to suppress is therefore DENIED.

**C.     Record on Taint**

Although defendants' Fourth Amendment rights are not implicated by the recordings at issue due to the lack of a reasonable expectation of privacy in the recorded conversations, the court makes the following observations about the evidence that has been developed in the record addressing defendants' arguments about possible taint, which may provide guidance to the parties and inform their trial strategy.

The government has identified the uses made of the recordings at issue during the course of the investigation and presentation of the indictment.  The government has provided declarations addressing defendants' concerns whether any confidential sources may have been persuaded to cooperate based on the illegal recordings, or whether any witnesses or lawyers were informed of the recordings as part of a reverse proffer by the government lawyers to induce cooperation.

**1.     Cooperating Witnesses**

The FBI played five stationary courthouse recordings to four witnesses, one of whom heard a recording that may have captured Rasheed's voice, 1D511.009.  Wynar Decl. ¶ 16.  That witness had been interviewed three times, on January 11, 2011, September 11, 2012, and November 11, 2014, prior to having the audio recording played for him on November 18, 2014.  Wynar Decl. ¶ 23.  That witness did not plead guilty, but provided cooperation in exchange for immunity.  *Id.*  Prior to commencement of his November 11, 2014, interview, the witness was granted immunity under the terms of a "queen for a day," and signed a letter at the conclusion of the interview.  *Id.,* Ex.M.  At his November 18, 2014, interview, the witness identified Rasheed's voice on the recording, and did not provide any new or additional information about the content of the recording.  *Id.* ¶¶ 19, 23-24 and Ex. M.  Under these circumstances, the court finds no material issue whether the recordings would have influenced the witness's decision to cooperate, given that he had agreed to cooperate with the government before being played the courthouse audio recording.

13

### 2. Grand Jury

The government represents that during the presentation of the indictment on November 18, 2014, the grand jury was provided information about an audio recording capturing the voices of Berry and Rasheed bidding in a secondary auction on August 17, 2010, at the Fallon Street bus stop, 1D484.002.  Kumar Decl. ¶ 9.  The government further represents that on November 18, 2014, the grand jury was played an audio recording of Rasheed at the same bus stop, 1D511.009.  *Id.*  The government represents that no additional subpoenas or testimony were sought by the grand jury after reviewing the recordings.  Kumar Decl. ¶ 11.  The court notes that the indictment was returned and filed on November 19, 2014.

It is well-settled that unlawfully seized evidence is admissible before a grand jury. *United States v. Calandra*, 414 U.S. 338, 344-45, 348-52 (1974) ("The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered.").  *See also United States v. Williams*, 504 U.S. 36, 50 (1992) (noting that in *Calandra,* challenging physical evidence the government had obtained through a violation of the Fourth Amendment, "we rejected the proposal that the exclusionary rule be extended to grand jury proceedings, because of 'the potential injury to the historic role and functions of the grand jury.'"); *United States v. Zielezinski*, 740 F.2d 727, 732 (9th Cir. 1984) (citing *Calandra* as authority that "challenges to indictments will not be heard where they rest on objections to the evidence-gathering process," as distinct from challenges based on improprieties within the grand jury process itself).  Defendants' Fourth Amendment concerns are therefore not implicated by the grand jury's exposure to the warrantless recordings.

### 3. Lawyers

The government represents that on March 21, 2013, the government played a stationary audio recording capturing Al Florida's voice at the Fallon Street bus stop, identified as 1D430.001, during a pre-indictment meeting with an attorney representing John Shiells, without Shiells present.  Kumar Decl. ¶ 7.  Shiells was subsequently

14

indicted on November 19, 2014, and pled guilty to bid rigging and mail fraud on July 8, 2015, pursuant to a cooperation agreement with the government.  *See United States v. John Shiells, et al.*, CR 14-00581 PJH.  The court notes that this particular use of a stationary recording is the only one presenting a potential issue of taint, but there is no evidence in the record on the question whether playing this audio recording for Shiells' attorney influenced Shiells' decision to cooperate, or whether any evidence was obtained as a direct result of his cooperation.  *See United States v. Huberts,* 637 F.2d 630, 638 (9th Cir. 1980) (discussing exclusionary rule and exceptions to the rule) (citing *Wong Sun v. United States,* 371 U.S. 471, 488-89 (1963)).  Because the court has found that defendants did not have a legitimate expectation of privacy in the recorded conversations, it does not reach the issue of taint with respect to any evidence derived from Shiells.

**IV.    CONCLUSION**

For the foregoing reasons, defendants' motion to suppress the warrantless audio recordings is DENIED.

**IT IS SO ORDERED.**

Dated:  July 26, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge