1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7
8

UNITED STATES OF AMERICA,

Plaintiff,

Case No.  14-cr-00582-PJH-1

9

v.

**PRETRIAL ORDER NO. 3**

10
11
12

ALVIN FLORIDA, JR.;
ROBERT ALHASASH RASHEED;
JOHN LEE BERRY, III; and
REFUGIO DIAZ,

Defendants.

Doc. nos. 227, 229, 230, 231, 233, 234,
236, 237, 238, 239, 240, 242, 244, 245,
260, 262, 264

13

14          This matter came on for pretrial conference and motion hearing on October 12,

15   2016.  As stated on the record and summarized below, the court rules on the motions to

16   sever, motions in limine, and other disputed pretrial matters as follows:

17   **I.     Motions to Sever**

18          Defendants Alvin Florida, John Lee Berry and Refugio Diaz each have filed a

19   motion to sever his case for trial from his co-defendants pursuant to Rule 14, on the

20   ground that admission of co-defendant Robert Rasheed's prior statements would violate

21   his right to confrontation under *Bruton v. United States*, 391 U.S. 123 (1968).  Doc. nos.

22   237, 233, 234.  Moving defendants' *Bruton* challenges fall squarely within *Richardson v.*

23   *Marsh*, 481 U.S. 200, 207-08 (1987), limiting protection under the *Bruton* rule to "only

24   those statements that 'clearly inculpate' the defendant or are 'powerfully incriminating,'"

25   and subsequent Ninth Circuit authority following *Marsh*.  *See United States v. Hoac*, 990

26   F.2d 1099, 1105 (9th Cir. 1993) ("this court has held that a co-defendant's statement that

27   does not incriminate the defendant unless linked with other evidence introduced at trial

28   does not violate the defendant's Sixth Amendment rights") (citing *United States v.*

United States District Court
Northern District of California

*Sherlock*, 865 F.2d 1069, 1080 (9th Cir. 1989), *amended*, 962 F.2d 1349 (9th Cir. 1992)).

Based on the government's representations that defendant Rasheed's statements will be

introduced through FBI Special Agent Paulson's testimony, redacted to avoid any

reference to the names of the other defendants, and subject to proper jury instructions,

the motions to sever pursuant to *Bruton* are DENIED.  The court further ORDERS, at the

request of the government, that defense counsel are instructed to refrain from asking any

question on cross-examination of Agent Paulson that could elicit testimony about

Rasheed's statements referring to any of Rasheed's co-defendants, to avoid implicating

*Bruton.  See U.S. v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 674 (9th Cir. 2009) ("Our

Confrontation Clause analysis does not change because a co-defendant, as opposed to

the prosecutor, elicited the hearsay statement.").

Berry and Diaz also argue that the vast majority of evidence proffered by the

government does not implicate them at all, and that joinder would be prejudicial under

Rule 14.  Doc. nos. 233, 234.  The government has demonstrated that joinder would not

be prejudicial under the four-factor test set forth in *United States v. Fernandez,* 388 F.3d

1199, 1241 (9th Cir. 2004), *modified by* 425 F.3d 1248 (9th Cir. 2005):

    i.    the jury will be able to collate and appraise the individual evidence against

        each defendant, where each defendant played a different role in the

        conspiracy.

    ii.    the court will issue appropriate limiting instructions; in particular, Ninth

        Circuit Model Criminal Jury Instructions 1.13 and 3.12, which are jointly

        proposed by the parties, specifically instruct on separate consideration for

        each defendant.  Doc. no. 244.

    iii.    the ordinary juror's competence in evaluating the evidence and applicable

        legal concepts has not been brought into question at this juncture, and

        neither Berry nor Diaz has met his burden to show that jurors would not be

        able to follow the limiting instruction.  *See U.S. v. Nelson*, 137 F.3d 1094,

        1108 (9th Cir. 1998) ("a defendant seeking severance based on the

United States District Court
Northern District of California

1    'spillover' effect of evidence admitted against a co-defendant must also

2    demonstrate the insufficiency of limiting instructions given by the judge")

3    (internal citations omitted).

4    iv.  the risk that a joint trial would compromise a defendant's trial right or

5    prevent the jury from making a reliable judgment about guilt or innocence

6    would be minimized by proper instructions which instruct the jury that it

7    "must consider and decide the case of each defendant separately," and that

8    the jury's verdict "as to one defendant should not control your verdict as to

9    any other defendant."  Ninth Cir. Model Criminal Jury Instruction 3.12.

10  In the absence of a showing that joinder would be prejudicial, Diaz and Berry's motions to

11  sever pursuant to Rule 14 on the ground of prejudice are DENIED based on the court's

12  finding that the public interest in judicial economy favors joint trial and weighs against

13  severance.  *See Fernandez*, 388 F.3d at 1242 ("a joint trial is particularly appropriate

14  where the co-defendants are charged with conspiracy, because the concern for judicial

15  efficiency is less likely to be outweighed by possible prejudice to the defendants when

16  much of the same evidence would be admissible against each of them in separate

17  trials").

18    Accordingly, the motions to sever are DENIED.  Doc. nos. 237, 233, 234.

19  **II.**    **Motions in Limine**

20      **A.**    **Government's Motions in Limine**

21        1.    The government's motion in limine ("MIL") No. 1 to prohibit

22  defendants from introducing evidence or argument that their bid-rigging agreements were

23  reasonable, or that the victims were negligent about the bid-rigging conduct, is

24  GRANTED.  As the court ruled in Pretrial Order No. 1 denying defendants' motion to

25  apply the rule of reason, bid-rigging is widely recognized as a form of price-fixing, which

26  is "conclusively presumed to be unreasonable and therefore illegal without elaborate

27  inquiry as to the precise harm they have caused or the business excuse for their use."

28  *Northern Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 5 (1958).  Defendants oppose the

United States District Court
Northern District of California

United States District Court
Northern District of California

government's motion because they seek to introduce evidence of auction sale price analysis to rebut the allegations that defendants' actions "artificially suppressed prices" at the public auctions, as alleged in paragraph 9.d of the indictment, describing the Means and Methods.  The government represents that it will not present evidence that prices were artificially suppressed, as it is not required to prove economic harm.  The government is not required to prove every allegation in the indictment, in light of authority recognizing that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime."  *United States v. Miller*, 471 U.S. 130, 136 (1985).  "The cases make clear that the government need not prove all facts charged in an indictment; instead, only enough facts to prove the essential elements of the crime must be demonstrated at trial."  *United States v. Jen*kins, 785 F.2d 1387, 1392 (9th Cir. 1986) (citations omitted).

Defendants contend that their analysis of auction sale prices goes to the element of restraint on interstate commerce, and is not offered for the improper purpose of showing that the bid-rigging was reasonable, justified, or pro-competitive.  The allegations supporting the interstate trade and commerce element at ¶ 11 of the indictment do not, however, refer to artificially suppressed prices.  Thus, any defense argument that defendants' actions did not artificially suppress prices at the public auctions would not go to the interstate element, but would create confusion as to whether that pro-competitive effect on prices would justify the bid-rigging agreement.  Because bid-rigging is plainly anticompetitive, "[i]t is no excuse that the prices fixed are themselves reasonable."  *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980).

Because evidence of the effect of defendants' conduct on auction prices and other evidence of pro-competitive justification for bid-rigging is not relevant, it is not admissible under FRE 402.  Similarly, evidence that the auctioneers, trustee companies or banks were negligent in preventing the anticompetitive conduct, or even acquiescent, is not

relevant to the bid-rigging charge.  Furthermore, under FRE 403, any probative value of evidence of reasonableness or the negligence of other parties is substantially outweighed by the danger of unfair prejudice or confusion of the issues.  Accordingly, the government's MIL No. 1 is GRANTED.  However, the court sustains the defense objection to referring to the banks, trustees, and beneficiaries as "victims," given that the government does not need to prove any injury or financial loss as an element of bid-rigging.

2.      The government's MIL No. 2 to admit evidence of cooperating witnesses' guilty pleas and plea agreements, as properly considered by the jury in evaluating witness credibility, is GRANTED.  *U.S. v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) ("evidence of the plea is relevant to credibility regardless whether government or defendant initiates inquiry about it").  As defense counsel stated at the hearing, defendants intend to question the cooperating witnesses about their relationship with the government, and inquire about their prior meetings with the prosecutors and agents, without directly asking about their plea agreements, yet defendants argue that the evidence of the plea agreement would have no probative value and would unduly prejudice defendants by implying that defendants are guilty because the cooperating witnesses have admitted guilt.  Under settled Ninth Circuit authority recognizing the probative value of plea agreements for evaluating witness credibility, the court finds that the probative value of the plea agreements is not "substantially outweighed by a danger of" unfair prejudice to defendants pursuant to FRE 403.  *Halbert*, 640 F.2d at 1004; *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976).

To minimize the risk of undue prejudice to defendants by introducing evidence of the cooperating witnesses' plea agreements, the court will give a limiting instruction based on Ninth Circuit Model Criminal Jury Instruction 4.9.  The parties are ordered to meet and confer on an instruction or stipulation of fact concerning the dismissal of the mail fraud counts against the cooperating witnesses as well as the defendants in this case.

5

3.      The government's MIL No. 3 to exclude any evidence or argument impeaching a witness by introducing evidence of conviction of a crime pursuant to FRE 609(a) is GRANTED as unopposed, in light of defendants' concessions that none of the prior convictions disclosed by the government meet the standard for impeachment under the rules of evidence and that defendants will not cross-examine the witnesses about their prior convictions.

4.      The government's MIL No. 4 to admit summary charts pursuant to FRE 611(a) is GRANTED as unopposed.

5.      The government's MIL No. 5 to admit business records and public records under FRE 803(6), (8) and (15), and self-authenticating documents pursuant to FRE 902(1), (4) and (11) is GRANTED as unopposed.

**B.      Defendants' Motions in Limine**

1.      Defendants' joint MIL No. 1, doc. no. 236, to admit testimony and evidence regarding an analysis of auction sale prices during and after the conspiracy period is DENIED for the reasons set forth with respect to the government's MIL No. 1, and on the separate and alternative grounds articulated by the government in its opposition brief:

a) The analysis proposed by defendants comparing post-conspiracy auction sales prices with the prices of all properties sold at auction during the charged time period is not relevant to the prices of the set of selected properties that defendants actually purchased.  Thus, the analysis described by defendants is inadmissible as irrelevant pursuant to FRE 402.

b) Defendants have not offered a specific evidentiary basis for introducing testimony regarding the analysis by their consultant, Jeffrey Andrien.  Andrien is not a percipient witness under FRE 701, he has not been timely designated as an expert under Fed. R. Crim. P. 16, and defendants have not shown that Andrien's testimony is reliable under FRE 702.  In particular, defendants have not proffered any basis for the reliability of Andrien's testimony, or any other expert, about an analysis of auction sale prices.  *See*

United States District Court
Northern District of California

1    *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 593 (1993) (factors the

2    court can consider in determining whether to admit expert scientific testimony under FRE

3    702 include whether the theory or technique employed by the expert is generally

4    accepted in the scientific community; whether it's been subjected to peer review and

5    publication; whether it can be and has been tested; and whether the known or potential

6    rate of error is acceptable).

7              2.      Defendants' joint MIL No. 2, doc. no. 236, to exclude any evidence

8    derived from the stationary courthouse recordings made in San Mateo County, which

9    were subject to the order suppressing electronic evidence issued in *United States v.*

10   *Giraudo*, No. CR 14-534 CRB, and to hold a taint hearing is DENIED for lack of standing,

11   particularly in light of the court's ruling denying defendants' motion to suppress the

12   courthouse recordings in this case.  *See Alderman v. United States*, 394 U.S. 165, 171–

13   72 (1969) ("The established principle is that suppression of the product of a Fourth

14   Amendment violation can be successfully urged only by those whose rights were violated

15   by the search itself, not by those who are aggrieved solely by the introduction of

16   damaging evidence. Coconspirators and codefendants have been accorded no special

17   standing.")).   Defendants' MIL No. 2 is DENIED on the separate and alternative ground

18   that the government has filed declarations stating that no evidence in this case was

19   derived from the San Mateo recordings: the stationary recordings were not played for any

20   attorneys representing clients implicated in the Alameda and Contra Costa County

21   conspiracies as part of plea negotiations; the stationary San Mateo recordings were not

22   played for any of the witnesses cooperating in the Alameda and Contra Costa county

23   investigations; and none of the stationary San Mateo recordings were played for the

24   grand jury to return an indictment in this case.  Bond Decl. ¶ 4; Sambat Decl. ¶¶ 4, 5

25   (doc. nos. 263-1 and -2).

26             3.      Defendants' joint MIL, doc. no. 230, to exclude any evidence offered

27   by the government pursuant to FRE 404(b) is DENIED as moot given that the evidence

28   subject to the government's notice of intent to introduce such evidence, doc. no. 243, is

not evidence of a crime, wrong or other act subject to FRE 404(b), but, as the government conceded, was only noticed as FRE 404(b) evidence as a cautionary measure.

        4.    Defendants' joint MIL, doc. no. 231, to verify compliance with all *Jencks, Brady, Giglio,* and *Henthorn* obligations, and to exclude any witness from testifying if the government has not disclosed all such material related to that witness raises challenges with respect to two specific witnesses:

    a) At the hearing, defense counsel asked for the reports by Pretrial Services concerning witness Brian McKinzie's pretrial release violations for impeachment purposes.  The court GRANTED the motion in part and ordered the government to produce only the recommendation portion of the Pretrial Services violation notices to prevent disclosure of McKinzie's personal background information, but having since reviewed the Pretrial Services memoranda, the court determines that the violation notices contain potential impeachment material and that the recommendation portions alone provide insufficient factual detail.  The court will not, however, order full disclosure of the confidential documents prepared by Pretrial Services without a response from McKinzie, whose attorney was recently hospitalized and has been unavailable.  The government must therefore secure McKinzie's consent to disclose the Pretrial Services documents, if it has not already done so, and produce those materials to defense counsel pursuant to its *Giglio* obligations as soon as possible, but by no later than the first day of trial.

    b) Defense counsel informed the court that on the eve of the pretrial conference, the government notified defendants that it would not disclose the true identity of the undercover agent ("UC"), Special Agent UCE-3322.  Doc. no. 273.  At the pretrial conference, the government acknowledged that it stated in its pretrial papers that it would disclose the undercover agent's identity, but represented that it had only recently learned of circumstances raising concerns for the agent's safety, which were not attributable to defendants in this case or any of the other bid-rigging cases prosecuted in this district. The court ordered expedited briefing on the government's request to protect the UC's

8

identity from disclosure, including additional security measures during trial.  The court ruled on the government's motion for miscellaneous relief regarding the UC's testimony in a separate order.  *See* doc. no. 282.

5.     The government addressed defendants' miscellaneous requests for disclosures, as set forth in their joint pretrial conference statement, doc. no. 262, as follows:

a) The government stated that it would produce transcripts of cooperating witnesses' statements at their change of plea hearings when they become available.

b) The government stated that it produced to the defense the exhibits from the government's exhibit list, obviating the need to disclose the specific Bates number ranges for each exhibit.

c) The government stated that it produced transcripts of the grand jury testimony given by witnesses to be called at trial.

d) With respect to outstanding *Jencks, Brady, Giglio*, and *Henthorn* material, which were the subject of defendants' fourth joint MIL, the court ordered further briefing with respect to the identity of the UC, UCE-3322, and ruled on the government's motion to protect the UC's true identity by separate written order.

e) Defendants stated that they did not intend to call witnesses or introduce exhibits in their case in chief, but reserved their right to call witnesses or introduce exhibits in rebuttal, which does not require disclosure in advance.

## III.    Peremptory Challenges

Defendants' motion to increase the number of peremptory challenges pursuant to Fed. R. Crim. P. 24 is GRANTED IN PART.  Doc. no. 229.  Defendants are allowed two additional peremptory challenges during jury selection, that is, 12 challenges to be used jointly or separately by defendants as they choose, plus two peremptory challenges for impaneling three alternate jurors.

United States District Court
Northern District of California

**IV.   Coconspirator Statements**

    **A.   Legal Standard**

        In order for a coconspirator statement to be *admissible* at trial under Federal Rule of Evidence 801(d)(2)(E), the prosecution must show by a preponderance of the evidence that:

        (1) the conspiracy existed when the statement was made;

        (2) the defendant had knowledge of, and participated in, the conspiracy; and

        (3) the statement was made "in furtherance" of the conspiracy.

*United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *adopted in relevant part on reh'g en banc*, 495 F.3d 1094, 1096 n.4 (9th Cir. 2007).  However, the *introduction* of coconspirator statements is distinct from the issue of *admissibility*.  That is in part because the court considers all of the evidence, even the defendants' evidence, in making the ultimate admissibility determination.  *See* GRAHAM, 30B FEDERAL PRACTICE & PROCEDURE, EVIDENCE § 7025 at 303-04 (2011 interim ed.) ("[a]t the conclusion of the presentation of evidence, the trial court on motion must determine *on all the evidence including evidence offered by the defendant* whether the government has established the requisite foundation to be more probably true than not true") (emphasis added).

        It is within the court's discretion to determine the order of proof or the showing, if any, that is appropriate prior to the government's *introduction* of the coconspirator statements.  *United States v. Arbelaez*, 719 F.2d 1453, 1460 (9th Cir. 1983) (concluding that it was not an abuse of discretion for the court to allow the government to introduce coconspirator statements prior to establishing prima facie the existence of a conspiracy).  Courts have utilized various approaches regarding the order of proof.  One such approach has been the provisional or conditional admission of the statement subject to it later being "connected up" at "the conclusion of the presentation of evidence," at which time the court must determine whether the government has established the requisite foundation (as set forth by the Ninth Circuit in *Larson*) to be more probably true than not true.  *See* GRAHAM, 30B FEDERAL PRACTICE & PROCEDURE, EVIDENCE § 7025; MUELLER &

10

1   KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:62, Procedure for Applying Coconspirator

2   Exception (4th ed., updated May 2016); *Arbelaez*, 719 F.2d at 1460.

3         Another approach includes what has essentially been deemed a mini-trial or

4   *James* hearing in advance of trial at which the court may consider each proffered

5   coconspirator statement and determine whether the government has established the

6   required foundational requirements as to each statement.  *See* GRAHAM, FEDERAL

7   PRACTICE & PROCEDURE, EVIDENCE § 7025 (citing *United States v. James*, 590 F.2d 575,

8   581-82 (5th Cir. 1979) (en banc)).  In a third approach, which has been deemed the

9   "middle course," the court requires the government to make a preliminary showing or

10  summary of its evidence establishing the predicate facts, while deferring the final decision

11  until the conclusion of the presentation of the evidence.  *See* MUELLER & KIRKPATRICK, 4

12  FEDERAL EVIDENCE § 8:62; *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir.

13  1991) (the "preferable procedure would be to at least require the government to preview

14  the evidence which it believes brings the statements within the coconspirator rule before

15  delving into the evidence at trial").

16        This court adopts the "middle course" on the government's requisite showing prior

17  to introduction of the coconspirator statements.  In accordance with this approach, the

18  court will preview prior to trial a summary of the coconspirator statements to be offered by

19  the government.  Following this preview, the court will determine which statements the

20  government will be permitted to introduce, either through the testimony of a witness or by

21  documentary evidence.  Even though the ultimate finding as to admissibility will not be

22  made until after the trial has commenced and perhaps as late as the close of the

23  evidence, the witnesses will be permitted to testify about coconspirator statements and

24  documents containing such statements will be published to the jury, subject to striking

25  should the government not be able to meet its burden as to all requirements for

26  admissibility.  In this sense, the government's introduction of the statements which will

27  have been previewed and approved by the court, will result in their conditional admission.

28

United States District Court
Northern District of California

The court may at some point during trial, and prior to the close of the evidence, rule on whether the government has shown by a preponderance of the evidence two of the three prongs required for the admissibility of all of the proffered coconspirator statements, including that (1) the conspiracy existed when the statement was made; and (2) that the defendant had knowledge of, and participated in, the conspiracy. *Larson*, 460 F.3d at 1212. The court, however, will not determine until *after* the witness testifies and/or the documentary evidence containing the particular coconspirator statement is introduced whether or not the government has shown by a preponderance of the evidence that the statement was made "in furtherance" of the conspiracy. *See id.* A coconspirator statement will NOT be unconditionally admitted into evidence until the court has determined that all three *Larson* prongs have been satisfied as to that statement.

As set forth in *United States v. Coleman*, CR 11-904 PJH, and *United States v. Zaragoza*, CR 08-83 PJH, the court has established a protocol requiring the government to disclose the following information with a list of the coconspirator statements to be introduced at trial:

(1) the identity of the testifying witness and/or the source of the conspirator statement;

(2) a statement describing the witness and/or the source of the conspirator statement;

(3) a summary of the evidence showing that the proffering witness, if a coconspirator, knew about and participated in the conspiracy;

(4) the *specific* coconspirator statements to be introduced via that witness and/or the source of the conspirator statement;

(5) the identity of the declarant of *each* specific coconspirator statement; and

(6) a summary of the evidence showing that *each* declarant of the coconspirator statement(s) knew about and participated in the conspiracy.

*Zaragoza,* doc. no. 574 (Amended Order for Pretrial Preparation). The government must also provide particulars of when the proffered statement was made, to establish that it

United States District Court
Northern District of California

United States District Court
Northern District of California

1   was made during the relevant period.  *Larson*, 460 F.3d at 1211 (requiring the

2   government to establish that "the conspiracy existed when the statement was made").

3   This requirement may be satisfied by providing sufficient detail to determine whether the

4   statements were made in the course of, and in furtherance of, the conspiracy, and does

5   not require the government to identify the exact date and time that the statement was

6   made.  *See Coleman,* doc. nos. 97 (granting in part motion to clarify pretrial order) and

7   122 (clarifying pretrial order).

8       **B.      Discussion**

9           The government timely filed its notice of coconspirator statements in compliance

10  with the court's disclosure protocol.  Doc. no. 194.  Defendants timely filed their

11  objections to the coconspirator statements.  Doc. no. 227.  The government prepared

12  charts organizing the coconspirator statements by type of document, and specifying the

13  date of the alleged coconspirator statement:

14          Appx. A: round sheets which tracked the individuals participating in each round,

15  the order of bidding, amount of each coconspirator's terminal bid, and the winner of the

16  round.

17          Appx. B: payoff ledgers attributable to Al Florida and Rasheed which listed the

18  properties in which coconspirators participated in a round, and the amount of payoff on

19  each property.

20          Appx. C: emails regarding payments owed for rounds.

21          Appx. D: consensual audio-video recordings of coconspirator statements.

22          Appx. E: handwritten notes on the memo lines of payoff checks, expense sheets

23  where conspirators calculated the acquisition costs, and other notes relating to meetings

24  and payoffs involving defendants Al Florida and/or Rasheed.

25          Appx. F: anticipated testimony of witnesses about what coconspirators said to

26  reach agreements.  The summary chart in Appendix F is taken from witness interview

27  reports, which have not been reviewed or adopted by the witnesses, and are not verbatim

28  transcripts.

United States District Court
Northern District of California

### 1.    Appendix A through Appendix E

The government's brief in support of the notice establishes the existence of a conspiracy among competitors not to bid against each other at public auction, involving 4 steps: (a) refraining from bidding against each other for certain properties at the public auction; (b) negotiating payoffs at the secondary auctions, also known as round robins or rounds; (c) preparing fraudulent auction paperwork by submitting a Receipt of Funds to the auctioneer; (d) making and receiving payoffs, either by cash or check.  Doc. no. 194 at 4-8 and Bond Decl.

Defendants move to exclude Appendices A through E because they contain evidence of the dismissed mail fraud counts which defendants contend are irrelevant to the bid-rigging conspiracy, on the theory that the agreement to rig bids at or before the public auction constitutes the whole offense.  Doc. no. 227 at 2-3.  The government has shown, however, that submitting the auction paperwork was part of the alleged conspiracy and supports the interstate trade and commerce element, as charged in ¶ 11 of the indictment.  Similarly, the rounds were part of the means and methods of the bid-rigging scheme, as charged in ¶ 9 of the indictment.

In the alternative, defendants argue that even if the mail fraud evidence is relevant, it should be excluded under FRE 403 as unduly prejudicial.  Defendants contend that it would be misleading for the evidence to suggest that defendants profited at the expense of banks and defaulting homeowners, when no injury actually was suffered by the banks.  As discussed earlier, economic harm is not an element of bid-rigging, and the amount of monetary loss is not an issue that the jury will be asked to decide.  Further, defendants contend that evidence of the bid-rigging count should be limited to a conspiratorial agreement, and not round sheets, payouts, receipts of funds, etc.  However, the government has disclosed its theory that the conspiracy was carried out with those steps after the public auctions were held.

Because the government provided copies of certain categories of documents (i.e., (A) the round sheets, (B) payoff ledgers, (C) emails, (E) handwritten notes), no further

14

specificity is required.  The government also provided transcripts of the excerpts of the (D) audio-video recordings containing the coconspirator statements, so no further specificity is required for those statements.  With respect to the coconspirator statements summarized in Appendices A through E, the government has shown by a preponderance of the evidence that (1) the conspiracy existed when the statement was made; and (2) that the defendant had knowledge of, and participated in, the conspiracy.  *Larson*, 460 F.3d at 1212.  After the court hears the evidence at trial, it will determine whether the statement was made "in furtherance" of the conspiracy to satisfy the third *Larson* prong for admissibility.

### 2. Appendix F

With respect to anticipated witness testimony described in Appendix F, the government's notice lacks sufficient specificity about what each statement is and when it was made.  To cure this deficiency for the witnesses who are the subject of a FBI 302 witness report, the government is ORDERED to produce highlighted copies of the reports that indicate the topics on which the witness will testify and excerpts that indicate what time frame the witness is testifying about, **by no later than October 21, 2016**.

Other than this specific information that must be provided to the defense, the information summarized in Appendix F satisfies the information required by the court protocol: (1) the identity of the testifying witness and/or the source of the conspirator statement; (2) a statement describing the witness and/or the source of the conspirator statement; (3) a summary of the evidence showing that the proffering witness, if a coconspirator, knew about and participated in the conspiracy; (5) the identity of the declarant of *each* specific coconspirator statement; and (6) a summary of the evidence showing that *each* declarant of the coconspirator statement(s) knew about and participated in the conspiracy.  Based on the government's representation that it will produce highlighted witness reports to specify the coconspirator statements that will be introduced, the court determines that the first two *Larson* prongs for admissibility are satisfied for purposes of proceeding to trial: (1) the conspiracy existed when the

1    statement was made; and (2) the defendant had knowledge of, and participated in, the

2    conspiracy.

3                    **3.        Objection Based on Multiple Conspiracies**

4           Defendants argue that the coconspirator statements show there were multiple

5    conspiracies, rather than a single conspiracy, and are therefore inadmissible.  Doc. no.

6    227 at 7.  Defendants contend that on the face of the indictment, there are no allegations

7    of specific dates or instances of bid-rigging, and that a jury would conclude that multiple

8    conspiracies, rather than a single conspiracy, existed.  Under the "single agreement" test

9    set forth in *United States v. Zemek*, 634 F.2d 1159, 1167 (9th Cir. 1980), the government

10   has shown by a preponderance that "there was 'one overall agreement' to perform

11   various functions to achieve the objectives of the conspiracy."  (Citations omitted.)  The

12   factors for determining whether the evidence supports the existence of one overall

13   criminal venture are consistent with a single agreement here: (1) the nature of the

14   scheme, which, as alleged by the government, was not limited to refraining from bidding

15   on a particular property, but was an ongoing agreement not to bid on hundreds of

16   selected properties offered at Alameda County foreclosure auctions; (2) the identity of

17   participants include about 25 individuals who have admitted to participating in the same

18   bid-rigging conspiracy alleged against defendants, including alleged coconspirators who

19   have been charged in other criminal cases; (3) with respect to the quality, frequency, and

20   duration of each conspirator's transactions, each defendant participated in multiple

21   transactions by attending public trustee auctions and the rounds, which does not suggest

22   separate conspiracies given the continuity of the conduct over a two and a half-year

23   period; and (4) the commonality of times and goals is demonstrated by the allegations

24   that the conspiracy not only allowed the participants to acquire the properties at a

25   cheaper price but also ensured that one would receive payoffs from future rigged

26   properties.  Doc. no. 194 at 8.  *See Arbelaez*, 719 F.2d at 1457–58 (citing *Zemek*, 634

27   F.2d at 1168).

28

United States District Court
Northern District of California

1    Defendants have not shown at this juncture that the government cannot prove the

2  existence of a single conspiracy.  Based on the proffered evidence and argument by the

3  government, a rational juror could conclude that defendants engaged in a single overall

4  conspiracy.  *Arbelaez*, 719 F.2d at 1458.

5  **V.    Jury Instructions**

6    **A.    Jointly Proposed Instructions**

7    The court adopts the jury instructions proposed jointly by the parties.  Doc. no.

8  244.  The parties must file a final set of the jury instructions, reflecting the court's pretrial

9  rulings on all the proposed instructions, and a blind copy without citations, by the first day

10  of trial.

11    **B.    Government's Proposed Instructions**

12    The court rules on the instructions proposed by the government, doc. no. 242, as

13  follows:

14    1.    Stipulations of Fact: the court GRANTS the government's request to

15  give its proposed instruction No. 1, based on Ninth Cir. Model Crim. Instr. 2.4, subject to

16  stipulations entered by the parties concerning the evidence presented at trial.

17    2.    Statements by Defendant: the court GRANTS the government's

18  request to give its proposed instruction No. 2, based on Ninth Cir. Model Crim. Instr. 4.1.

19    3.    Other Crimes, Wrongs or Acts of Defendant: the court DENIES the

20  government's request to give its proposed instruction No. 3, based on Ninth Cir. Model

21  Crim. Instr. 4.3, as unnecessary in the absence of evidence subject to FRE 404(b).

22    4.    Elements of conspiracy to rig bids: the court GRANTS the

23  government's request to give its proposed instruction No. 4, based on the ABA model

24  instruction, "Elements of the Offense," in addition to Ninth Circuit Model Crim. Instr. 8.20,

25  "Conspiracy - Elements," which the government concedes would also be appropriate

26  without the bracketed sections and modifications included in defendants' proposed

27  instruction No. 3.  *See* ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN

28  CRIMINAL ANTITRUST CASES (2009).

United States District Court
Northern District of California

United States District Court
Northern District of California

5.      Conspiracy – Knowledge Of and Association With Other Conspirators: the court GRANTS the government's request to give its proposed instruction No. 5, based on Ninth Cir. Model Crim. Instr. 8.23, as unopposed by defendants.

6.      Bid Rigging: the court GRANTS the government's request to give its proposed instruction No. 6, modifying the ABA model "Bid Rigging" instruction, and further adopts the bracketed sections of the ABA model instruction that are included in defendants' proposed instruction No. 5, without their proposed modifications.

7.      Per Se Violations of the Antitrust Laws: the court GRANTS the government's request to give its proposed instruction No. 7, modifying the ABA model instruction "Per Se Violations of the Antitrust Laws," as unopposed by defendants in light of the court's ruling denying their motion to apply the rule of reason.

8.      Knowingly: the court GRANTS the government's request to give its proposed instruction No. 8 based on Ninth Cir. Model Crim. Instr. 5.6, as clearer and easier to follow than defendants' competing proposed instruction No. 7, which takes favorable portions of the ABA model instruction and omits other portions.

9.      Sherman Act Conspiracy – Proof of Overt Act Unnecessary: the court DENIES the government's request to give its proposed instruction No. 9 based on the ABA model instruction, on the ground that this instruction may cause confusion because the government must show that the conspiracy existed within the five-year statute of limitations period.  *See United States v. Miller*, 771 F.2d 1219, 1226 (9th Cir. 1985) (recognizing that a Sherman Act violation does not require an overt act, and clarifying that the statute of limitations does not begin to run so long as the co-conspirators continue to engage in overt acts designed to accomplish the objectives of the conspiracy) (citations omitted).  The government having conceded the need to instruct on the statute of limitations, the court will give the ABA model instruction entitled "Statute of Limitations."

10. Interstate Commerce: the court DEFERS RULING on the government's request to give its proposed instruction No. 10, based in part on the ABA model instruction which is also the source of defendants' proposed instruction No. 8, and ORDERS the parties to meet and confer to propose an instruction on the interstate commerce element. To provide the parties with guidance, the court finds instructive the following language used in the instruction given in *United States v. Guthrie*, 814 F. Supp. 942, 947 (E.D. Wash. 1993), *aff'd*, 17 F.3d 397 (9th Cir. 1994) (unpublished):

> While real estate remains physically in one state, transactions related to real estate can be in the flow of interstate commerce. To decide whether the alleged conspiracy was "in the flow" of interstate commerce, you must determine whether the activities of the alleged conspiracy restrained an essential part of a real estate transaction across state lines. When the alleged conspiracy occurs within the flow of interstate commerce, the magnitude of the commerce restrained is unimportant.

*See Guthrie*, 814 F. Supp. at 945 ("if the foreclosure sale was an integral part of an interstate foreclosure transaction, and if Guthrie's activity was an inseparable part of the foreclosure sale, then his activity would be an integral part of an interstate transaction, and therefore in the flow of interstate commerce") (citing *McLain v. Real Estate Bd., Inc.*, 444 U.S. 232, 244 (1980); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 785 (1975)).

11. Venue: the court GRANTS the government's request to give its proposed instruction No. 11 based on the ABA model instruction, as unopposed by defendants and consistent with Ninth Circuit authority.

## C. Defendants' Proposed Instructions

The court rules on the jury instructions proposed by defendants, doc. no. 240, as follows:

1. Opinion Evidence, Expert Witness: the court DENIES defendants' request to give proposed instruction No. 1, based on Ninth Cir. Model Instr. 4.14, for lack of an expert witness.

2. Separate Crime, Separate Consideration: the court DENIES defendants' request to give proposed instruction No. 2, as withdrawn in light of the

standard Ninth Circuit model instructions 1.13 (Separate Consideration For Each Defendant) and 3.10 (Activities Not Charged), and 3.12 (Separate Consideration of Single Count - Multiple Defendants), which the parties jointly proposed.

3.     Conspiracy - Elements: the court DENIES defendants' request to give their proposed instruction No. 3, modifying Ninth Cir. Model Instr. 8.20, as misstating the law.  The court will instead give the unmodified Ninth Circuit Model Criminal Jury Instruction 8.20, without the bracketed sections about an overt act, which is not an element of a Sherman Act violation.  *Miller*, 771 F.2d at 1226.

4.     Multiple Conspiracies: the court tentatively GRANTS defendants' request to give proposed instruction No. 4, modifying Ninth Cir. Model Instr. 8.22, subject to whether the evidence at trial supports the defense theory that there were multiple conspiracies.

5.     Bid-rigging: the court DENIES defendants' request to give proposed instruction No. 5, modifying the ABA model instruction and incorporating an instruction given in *United States v. Katakis,* CR 11-511 WBS (E.D. Cal. 2014), as confusing and misstating the law.  The court will give the ABA model instruction on "Bid Rigging" with the bracketed sections requested by defendants but without their proposed modifications.

6.     Auction Procedures/Resales: the court DEFERS RULING on defendants' request to give proposed instruction No. 6, which is taken from an instruction given in *Katakis*, where the defendants were on trial for conspiring to commit mail fraud, pending defendants' submission of authority for giving this instruction.

7.     Knowingly - Defined: the court DENIES defendants' request to give proposed instruction No. 7, modifying the ABA model instruction and omitting significant sections of that model instruction.  The court will give Ninth Circuit Model Criminal Jury Instruction 5.6, as proposed by the government.

8.     Interstate Commerce: the court DEFERS RULING on defendants' proposed instruction No. 8, pending the parties' efforts to meet and confer on a jointly proposed instruction.

1           9.     Rule of Reason: the court DENIES defendants' request to give

proposed instructions Nos. 9, 10, 11 and 12, which disregard the court's ruling denying

defendants' motion to adjudicate the Sherman Act count pursuant to the rule of reason.

## VI.    Juror Questionnaire

The court provided counsel with the juror questionnaire to be distributed to the jury

venire members which incorporates some of the questions proposed jointly by the

parties, doc. no. 264, and by the defense, doc. no. 260.  None of the parties raised an

objection to the questionnaire.

The court's jury office will collect juror questionnaire responses in advance of the

trial date, to be made available to the parties on October 28, 2016.  Counsel may contact

the courtroom deputy to arrange a time to pick up a set of questionnaires from the court.

The parties are admonished that the contents of the juror questionnaires are confidential

and may not be published in any form or used for any purpose other than preparing for

jury selection in this case.

## VII.    Verdict Form

At the pretrial conference, the court did not reach the issue of which proposed

verdict form would be given to the jury.  Having reviewed the parties' competing verdict

forms, the court will give the verdict form proposed by the government, doc. no. 238,

which sets forth a specific factual finding for each defendant, over the form proposed by

defendants, doc. no. 239, which only sets forth a statutory violation.

**IT IS SO ORDERED.**

Dated:  October 18, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge